Thank you, your honor. And we'll move to the fourth case this morning, Knudtson versus Trempealeau County, Wisconsin. Good morning. May it please the court. Excuse me just a minute, Mr. Bernhardt. Okay, Mr. Winston. Mr. Bernhardt, you may proceed. Good morning. May it please the court. Opposing counsel, my name is Pete Reinhart, and I represent Nancy Knudtson in this case. This is an establishment clause case, not a free exercise clause case. And it involves a public employer pressuring a public employee, Nancy Knudtson, to attend church and then punishing her for not attending church. There are four material facts I would like to highlight for the court. First, the activity issue in this case was an entirely religious event. It was a funeral at a Methodist church presided over by a Methodist pastor, including included readings from the Old Testament and New Testament, a religious meditation, religious prayers, and religious hymns. Second, Nancy Knudtson and her two coworkers were pressured to attend the funeral service at the church. The two employees who gave into the pressure and attended were not punished. Nancy Knudtson, who did not give into the pressure, was punished. Third, at the time... Counsel, they were also given an option not to attend too, weren't they not? They were initially, Your Honor. But at the end of the day, the only option that Ms. Knudtson had was to attend the funeral service or be placed on involuntary administrative leave. And that's what occurred. So at the end of the day, that was her only option. Third, at the time of the coercion and punishment, D.A. McMahon knew that the funeral service was at a Methodist church, as did Corporation Counsel, Mr. Niemeyer. Turning to the law in this case, for decades, the law regarding the issue in this case has been clear and unequivocal. At a minimum, the Constitution guarantees that the government may not coerce anyone to support or participate in religion. Neither the state nor the federal government can force or influence a person to go to church or to remain away from church against his or her will, and no person can be punished for church attendance or non-attendance. The district court's decision changes these constitutional guarantees. It creates caveats and exceptions to the guarantees. Specifically, if the district court's decision is uphold, a public employer will be able to force a public employee to attend church or punish that employee for non-attendance, as long as there is no religious motivation on the part of the government or the person who chooses not to object. This would be a significant change in the law. On that point, Mr. Reinhart, can you point us to cases that have rejected such requirements before? I'm not aware of any Establishment Clause cases in which there was neither a religious motive on the part of the government or the person who chose not to attend church. I just haven't been able to find any cases like that, and I would submit that that's probably because the law has been well settled on that for some time. I can point you to two cases that I think are helpful. One is the 10th Circuit case of Fields v. City of Tulsa. In that case, police officers were I think appropriately said that wasn't a violation of the Establishment Clause because the police officers weren't required to attend the religious service at the mosque. In fact, the arrangements were specifically made so they wouldn't be present when the religious service was going on. Under state law, she had the right, am I correct, to stay in the office and work. The DA had no right to close that office. Well, that's subject to debate. Maybe she had the right. She didn't have the ability because the office was closed, the office was locked, and her computer access was turned off. The DA's view is he wanted to shut it down, his office. And he did. And he did. And she had to do one of two things. Either go to the funeral or she could go home in an unpaid status. Am I right? That was the original discussion. But when she was sent home at the end of the day after these various discussions occurred, she had two options. Go to the service or be placed on involuntary administrative leave. I think that's what I just said. Yeah, okay. The second case that I think is instructive on this issue is the Milwaukee Deputy Sheriff's Association case. Again, involving public employment and mandatory training at work where the training conveyed a religious message and the district court found that that mandatory training was a violation of the establishment clause. On the other hand, what I'm trying to point out is that there's a wealth of cases involving non-employment issues that are different than the public employment cases. And those cases you'll see are the religious monuments, school prayer, holidays, religious activities and public facilities, public activities and religious models and symbols. And in those cases, the courts will often look at the religious content of the challenged activity. That is, is the religious content incidental or is it diluted? To address these cases, as your honors know, the courts have come up with a number of different tests which seem to be constantly changing and evolving. In this case, we proceeded under both the Lemon Test and the Coercion Test. And under the Lemon Test, we specifically proceeded under the second prong of the Lemon Test, which is the Primary Effects Test. And the question there is, does the government practice have the principal or primary effect of advancing religion? The factual inquiry there is whether a reasonable person being apprised of the circumstances surrounding the challenged action, would that reasonable person conclude that it amounted to an endorsement of religion? And in this second prong, the intent of the government is not an issue. And that's where I get to the principal dilution, which I think is relatively important in this case. When looking at the second prong of the Lemon Test, the courts have looked at, is the religious component of the challenged activity a fraction of the event and thus less likely to be seen as an endorsement, or is it the entire event? Brian Hart, can I ask you, is it relevant here that people in our culture often attend weddings and funerals across religious lines? Yes, it is. And that's where I see the danger. Because if the district court's decision is upheld, any employer can save for these life it could be a wedding, it could be some celebration of the life of a child, or it could be a funeral. And a public employer will be entitled to say, you have to go to that event, regardless of whether or not that event intersects and is an entirely religious event. Well, how about if the employee objects on religious grounds? That's not the facts here. Right, right. Well, then you're placing a an onus or burden on the employee to object on religious grounds. And as we all know, many employees are going to be hesitant to do that. Because, you know, employees are in a somewhat difficult situation with their employer, they're like students, in essence, they're more subject to coercion than the general public would be. Does Wisconsin have what in Indiana, we call a ghost employment statute for public employees? I'm not sure what you mean, Your Honor, by ghost employment statute. Follows up on Judge Ripple's point. But in essence, it's a crime under Indiana law, at least, to for a public employer and employee to pay an employee for not working, except in unusual circumstances. As I was reading the briefs, frankly, I suspected that explained the county human relations or personnel department's position that employees who attended the funeral in this case would have to take vacation time to do so. I don't know the answer to your question, Your Honor, because I primarily represent plaintiffs and I've never had a plaintiff in that situation raise an issue. I see I have five minutes left. I'm going and I know the court was going to point out that I want to dip into my time for rebuttal several minutes just to complete my argument. And that's fine. Okay. So I want to go back to the reasonable person test under the under the inquiry under the lemon test. A reasonable person looking at this is going to say, okay, there were three employees who were pressured to attend an entirely religious event to gave into this pressure and went to the event. Nothing happened to them. The third Miss Knudsen, who did not, was punished and had some really bad things happen to her, placed on involuntary leave for five months, accused of insubordination and abandoning her job, only allowed initially to return if she then not allowed to return at all, then fired. And they would conclude it had she gone to this religious event, she would still be employed. And these things wouldn't wouldn't have happened. I would submit to your honors that the the district court's decision rewrites or changes the lemon test and rewrites and changes the coercion test to include additional elements, both a religious motivation by the government and a religious objection by the employee. And if that is upheld, the constitutional protections under the establishment clause, the guaranteed or minimum protections will be substantially eroded. And public employers will be emboldened to force church attendance under the guise of respect and honor for major life events like the birth of a child, a marriage or the death of a child as occurred in this case. And I will save the rest of my time for rebuttal. Thank you, counsel. Mr. Ross. We can't hear you. We can't hear you. Can you hear me now? Yes. Good morning, your honors. I may please the court. Assistant Attorney General Colin Roth, on behalf of Appellee District Attorney McMahon. I think it's clear that this is a garden variety employment dispute dressed up as an establishment clause case. It's true. Miss Knudsen and her boss, District Attorney McMahon, became involved in a test of wills, as the district court put it, during a heated workplace dispute that ultimately led to her termination. And perhaps no one involved passed that test with flying colors. But this ordinary employment dispute does not implicate the establishment clause, as Miss Knudsen claims, simply because the conflict arose out of a funeral that happened to be held at a Methodist church. As the Supreme Court said in Lee v. Wiseman, the establishment clause guards against, quote, a state created orthodoxy that puts at grave risk, the freedom of belief and conscience. But not even Miss Knudsen here argues that District Attorney McMahon's actions threatened anything like this. And I think where she goes wrong is exactly where Judge Hamilton was asking, is she offers a critically incomplete legal test for coercion theory. I think in Miss Knudsen's mind, it's essentially a strict liability test here. Any coercion combined with any religious content whatsoever results in an establishment clause violation. But that's not the test. As the Supreme Court said in Van Orden, simply having religious content does not run afoul of the establishment clause. Instead, as this court has recognized in Kerr v. Fari, you have to examine whether religion or something else is the aim of the coercion. I think that's the crucial piece here, religion or something else. What is the aim of coercion? Mr. Roth, if I recall correctly, I think you're arguing also that there was no coercion here. So that, yes, Your Honor, that's an alternative argument. But I think, go ahead. Suppose we've got different facts here and the District Attorney says staff will be encouraged to attend a prayer revival meeting so that you have an opportunity to save your souls. And you have a staff member who objects on religious grounds. And then we have the sequence of sanctions and leave and ultimately firing in this case. That would be pretty troubling under the establishment clause. Would you agree? I agree, Your Honor. But I think as... And the problem is purpose, not whether these pressures were coercive. Exactly. And I think that's the key point here. This could be deemed coercive. Well, I think our primary argument is whether or not there was pressure put on Ms. Knutson to attend this funeral is essentially irrelevant here because the aim of coercion and by assuming any existed, assuming there was coercion, any coercion that happened was entirely disconnected from religion. As everyone here... Can you direct us to other case law that deals with or that explicitly requires, for example, a religious objection from an employee or other target of government pressure? So I think if you're proceeding under a coercion theory and you examine the Lee, Santa Fe, and Elmbrook, which I think are the leading coercion cases, all of them do focus very a school prayer case focused very carefully on young graduates who object are induced to conform by being forced to attend these prayer sessions. And I think so that's a thread that runs through all of the coercion cases that if you're being coerced, it only matters for establishment clause reasons. If you're being coerced to engage in a religious practice you don't agree with. And I think that's just not at all what happened here. And I think a simple thought experiment that we offered in our brief really helps underscore that fact. So imagine what happened here was the funeral was held at a secular funeral home, secular officiant, and a secular proceeding. All the facts indicate that the exact same dispute would have occurred. District Attorney McMahon would have wanted his employees to go to the secular funeral to honor his deceased colleague. And Ms. Knutson would have objected because she had other work to do. And they would have had the same fight and everything else that followed from that would have been exactly the same. And so I think when you're talking about an establishment clause coercion claim, it's very difficult to understand how that claim can succeed if the exact same dispute would have happened removing religion from the equation altogether. And I think no one here disputes that that's true. Ms. Knutson concedes that Mr. District Attorney McMahon, his only aim was to encourage attendance to honor his deceased colleague. And she concedes that the only reason she didn't want to attend was to do her other work. Another point I'd like to emphasize, go ahead. Can I just ask you to address a point that Mr. Reinhart raised? And that is, if we affirm on the theory that in essence, there was no religious purpose or objection here on either side, do we invite, in essence, do we create a slippery slope where this notion of, let's say, a kind of secular honor and respect purpose winds up becoming a vehicle for pressuring public employees or others to participate in religious exercises that they don't want to? I don't think so, Your Honor, for a couple of reasons. The first is it's clear the establishment clause is an extremely fact-specific analysis. And the facts here are so far removed from some of the hypotheticals that Mr. Reinhart offered that I just think the court would have no trouble identifying violations if, for instance, government actors were encouraging people to attend prayer sessions. Second thing I'd say is if it's not part of your job duties, there are ordinary employment mechanisms to resist that sort of activity. It's not as if the public employers can force their employees to go around doing all these things disconnected from their job duties. So I don't think there's really a risk of a slippery slope here. And the last thing I'd say, I see my time is nearly up, but Judge Hamilton, you did note that I think funerals in our society are recognized as something different than, say, a prayer revival session. We understand that people of all faiths come together to honor the deceased. And so I think even viewed objectively, no one would see that a one-off funeral that happened here essentially amounts to the government establishing religion, which is what the establishment clause is all about. So with that, that concludes my presentation. I'll turn it over to co-counsel. Thank you, Mr. Roth. Mr. Westrom? Yeah, good morning, Your Honors. May it please the court, Attorney Oyvind Westrom on behalf of the Pali defendant, Trumplow County. Before getting to the merits of the law applicable to the case, I want to make a few factual points. Mr. Reinhart in his initial presentation noted that kind of three primary points, one of which was the fact that both Mr. Niemeyer on behalf of the county and District Attorney McMahon on behalf of the DA's office both knew that this was a religious event at the time that Ms. Knutson was asked or required to attend or encouraged to attend. That is not part of the record on summary judgment. Mr. Reinhart cited... He was going to a Methodist church. Well, that wasn't known. The fact that it was a Methodist church, whether that was known or not to the county, Ms. Sprigal, Mr. Niemeyer, and to Mr. McMahon was not part of the summary judgment record. And it certainly wasn't known to Ms. Knutson that it was a Methodist church. At the time that she made the decision not to attend, she did not know the nature of the service, whether it was at a religious service or whether it was going to be at a religious church. The fact that it was Methodist is something she learned later. So the venue was not known. Nature of the service is one question, but the venue was also not known? The venue was not known to Ms. Knutson when she made the decision. The venue, there was deposition testimony that Mr. McMahon and I believe Mr. Niemeyer knew that it was a Methodist church on September 8th, but that information was not part of the record before the judge on summary judgment. The other factual point I want to make, because there was some briefing as to whether or not Ms. Knutson had the ability to work from home and whether it was the county that really prevented her from working from home. And the evidence in this case clearly establishes that Ms. Knutson was both unable and unwilling to work from home on September 8th. She did not have, was not set up to work remotely. The work that she needed to do required her to be physically present in the office in order to access documents and do other things. She had a meeting scheduled that afternoon. And in fact, during her conversation with McMahon, she specifically stated to Mr. McMahon that she was not willing to work from home. Mr. Winston, Mr. McMahon is an employee of the state of Wisconsin, is that correct? That's correct. What about the, in this case, his employer or people that work for him? Are they your employees? The county's employees? It's a complicated issue and the statute is somewhat ambiguous as to, it's clear that he orders, he can direct and order their work. She's still a county employee in that she receives a check from the county. But as far as who controls and dictates her work, it was District Attorney McMahon who had that authority. But the statute is somewhat vague as to, you know, who has hiring and firing type authority with respect to the employee. The in any event, she's an employee of the county, but he dictates the rules of her employment. I would say that that's accurate. Thank you. And furthermore, with respect to the timing, you know, the coercion test in this case, Mr. Reinhart alleges that the county violated the coercion test by virtue of asking Ms. Knutson whether or not she wanted to or planned to attend the funeral. That question was posed at a time that Mr. McMahon had already closed down the office. He had physically changed the locks on the door and he had deactivated her computer. So at the point in time where the question was asked, there really was no other option. Working from home, even if the county permitted it, and even if Ms. Knutson was willing and able to work remotely, which she wasn't, working from home had been made an impossibility by virtue of Mr. McMahon that morning. So at that point, Ms. Knutson was willing to attend the funeral. When she said no, at that point, the only remaining option was to send her home with pay and work to try to work out a resolution with Mr. McMahon. And the county attempted to do that over the next several months, unfortunately, unsuccessfully. With respect to the coercion test, there were some questions posed earlier concerning the intent portion and whether or not the governmental entity has to have the intent or purpose of encouraging religion. And I think that is clearly inherent in the coercion test, that there has to be a religious intention or religious purpose on behalf of the governmental entity. And there does also have to be religious objection on behalf of the employee, which clearly did not exist in this case. You think it's a subjective test for the government? I don't see that in the case law. And I'd be very troubled by that requirement, particularly because in establishment clause cases, there's a long history of officials who are adherents of majority religions being oblivious to how their actions and decisions affect people in religious minorities. No, I think it's a reasonable standard test. So I think it is an objective standard, Judge Hamilton. It's not subjective, but it does require some level of objection on behalf of the individual. I think Mr. Roth identified the Lee and the Doe versus Elmbrook case as being situations where the religious objection on behalf of the individual is an important factor that the court considered. There was also a district court case out of Idaho, which clearly and emphatically held that objection on behalf of the employee is a required element to establish coercion. On the flip side, under the Lemon test, the primary purpose and intent, there's three prongs under Lemon. The first part of Lemon clearly does require intent and purpose, but the second element, we can see, does not require purpose of intent. The question was whether or not the activity has the primary effect of endorsing a religious activity. And if you look at the conduct of the county in this case, there's clearly nothing that the county did that had the primary effect of supporting or endorsing religion. The question, again, that was posed, whether or not she intended to attend the funeral, was made at a point in time where there were no other options. It was also made after the county had repeatedly informed both Ms. Knutson and Mr. McMahon that he did not have the authority to close down the office, and he did not have the authority to require an employee to attend the funeral. So simply asking the question, are you planning to attend, would not be deemed to have the primary effect of endorsing or supporting a particular religion. So I think for those reasons, the summary judgment that was granted by the district court was appropriate. I see that my time is up. Thank you, judges. Thank you, Mr. Winston. Mr. Reier? Yes. So just a few things. Attorney Wisdom brought up this case, and I think it was Idaho. That is the Norton v. Cotini case, if I pronounce it right. That was not an employment case. That was a case involving prisoners' rights, and it is an unpublished case. And I would submit to your honors that prisoners' rights cases are somewhat different when you look at establishment clause cases, because there are some additional, there are lesser protections involving prisoners. I, the question that has been asked by your honors is whether or not any of the cases, essentially the question is whether or not any of the cases hold or require that the person have a religious objection in order to have an establishment clause claim. Certainly under the Lemon test, that's not a requirement. Under the second prompt, it's just simply not a requirement. Under the coercion test, like the Lee case, I will acknowledge that there has been some reference or the court did mention whether or not the person had a religious objection. But I am not aware of any case holding under the coercion case, holding or requiring that the person has to have a religious objection. And in fact, the establishment clause doesn't say Congress shall make no law respecting an it's a broader societal goal of not allowing the government to impose religious beliefs on somebody or requiring somebody to attend a religious activity. And I, your honors, I don't see my time up on my screen. You got a minute and a half. Thank you very much. Oh, Mr. Wistrom said something about, first of all, I want to make it clear that both the district attorney and the corporation council were aware that this service was at a Methodist church. Mr. Wistrom said, well, that wasn't in the record. What I would tell you is that both of the defendants made that relevant because they brought up a sovereign immunity claim in their appeal briefs that they had not brought up at the district court level. And that knowledge of those two folks, the district attorney and the corporation council is directly relevant to that issue in terms of sovereign immunity, because You're referring to qualified immunity? I'm sorry, qualified immunity, correct. Which by the way, has no application to the county, but that's a different question. Sure. I just bring it up that that was something that the court put in its footnote and that in the court of appeals brief, that was brought up by the other side. And with respect to the qualified immunity issue, whether or not these folks were aware of it is important and relevant to the issue of whether or not a person in their position would know that they were violating the law. And in fact, both of them testified that, yeah, we understood at the time this was occurring that we could not force anyone to go to church. Your time has expired, Mr. Reiner. Thank you, your honor. Thanks to all counsel and the